IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
IN RE: ASBESTOS PRODUCTS      :    Consolidated Under
LIABILITY LITIGATION (No. VI) :    MDL DOCKET NO. 875
                              :
WILLIAM NEY individually and  :
as executor of the estate     :
of LORETTA NEY                :
                              :
v.                            :    E.D. Pa. Case No.
                              :    16-cv-02408
OWENS-ILLINOIS, INC., et al.  :
```

M E M O R A N D U M

**EDUARDO C. ROBRENO, J.**                    **AUGUST 11, 2016**

Presently before the Court is Plaintiff's motion to remand the action to the Court of Common Pleas of Philadelphia County. For the reasons that follow, the motion will be denied.

**I.   FACTS**

On March 11, 2014, William Ney and his wife Loretta Ney filed a short form complaint in the Philadelphia Court of Common Pleas alleging that Ms. Ney was exposed to asbestos in her household from asbestos fibers brought home on clothing worn by her father, Nicholas Grello, who was an insulator at the Bethlehem Steel Plant from 1948 to 1953. They named as defendants: Asbestos Corporation Limited; Crown, Cork & Seal Co., Inc. ("Crown") individually and as successor to Mundet Cork Corporation ("Mundet"); Owens Illinois, Inc. ("OI"); and Union Carbide Corporation. On April 25, 2014, two days after giving

her deposition, Ms. Ney died of mesothelioma. On June 2, 2014, the parties deposed Anthony DelGrosso, one of Mr. Grello's co-workers. During the deposition, Mr. DelGrosso testified that he was unfamiliar with Mundet insulation.[1] (OI Resp. ECF No. 11-5, p.3). On December 9, 2014, Mr. Ney filed an amended complaint substituting his wife's estate as a plaintiff and adding counts under Pennsylvania's Wrongful Death and Survival Acts.

On October 23, 2015, Mr. Ney noticed the deposition of a Crown corporate designee. On October 30, 2015, Crown responded that the deposition was unnecessary as it was planning to rely on 15 Pa.C.S. § 1929.1, which protects successor companies from their predecessor's asbestos liabilities.[2] (Pl. Mot. ECF No. 9-1,

---

[1]     This is consistent with a 2013 affidavit from Mr. DelGrosso in which he did not specifically identify Mundet products as being among those around which he recalled Mr. Grello working. (OI Resp. ECF No. 11-2).

[2]     15 Pa.C.S. § 1929.1 provides:

(a) Limitation on successor asbestos-related liabilities.—

(1) Except as further limited in paragraph (2), the cumulative successor asbestos-related liabilities of a domestic business corporation that was incorporated in this Commonwealth prior to May 1, 2001, shall be limited to the fair market value of the total assets of the transferor determined as of the time of the merger or consolidation, and such corporation shall have no responsibility for successor asbestos-related liabilities in excess of such limitation.

There is no question that Crown has already paid out, as the successor of Mundet, more than the value of Mundet's assets.

pp.7-9). Mr. Ney agreed to cancel the deposition on November 12, 2015 and to voluntarily dismiss Crown on April 18, 2016.

Crown was the only non-diverse defendant in the case which prevented removal to this Court. With Crown dismissed, OI filed a notice of removal pursuant to 28 U.S.C. §§ 1332 and 1446 on May 17, 2016. Even though OI filed the notice more than one year after commencement of the action, which is typically prohibited by 28 U.S.C. § 1446(c), it alleged that removal was nonetheless appropriate as Plaintiff had acted in bad faith and purposefully prevented removal by initially naming Crown as a defendant without reasonable cause.

## II.  LEGAL STANDARD

A party may not remove a case to federal court based on diversity jurisdiction more than one year after the action was commenced "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). The addition of a diversity defeating defendant "is fraudulent if 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006) (quoting Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985)). A court may not delve into the merits of a

claim or defense when assessing the fraudulent joinder question. Id. at 218 (citing Boyer v. Snap-on Tools Corp., 913 F.2d 108 (3d Cir. 1990)). However, in making this assessment, the court may evaluate whether an action is invalid as a matter of law, such as in the case of a binding statute barring liability. Id. at 219 (concluding that "[i]f a district court can discern, as a matter of law, that a cause of action is time-barred under state law, it follows that the cause fails to present even a colorable claim against the non-diverse defendant").

"'Since it would be extraordinary for a party directly to admit a 'bad faith' intention, his motive must of necessity be ascertained from circumstantial evidence.'" Forth v. Diversey Corp., 13-CV-808-A, 2013 WL 6096528, at *3 (W.D.N.Y. Nov. 20, 2013) (quoting Continental Ins. Co. v. N.L.R.B., 495 F.2d 44, 48 (2d Cir. 1974)). The removing party bears the burden of showing that removal is appropriate. Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007). The removal procedures under 28 U.S.C. §§ 1446 and 1447 are strictly construed against removal and all doubts are resolved in favor of remand. Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992).

## III. DISCUSSION

As stated, Plaintiff sued Crown both individually and as the successor of Mundet. If he had a "reasonable basis in fact or colorable ground supporting" either of these bases, the

present motion would be granted. However, based on the evidence presented, the Court finds that there was no reasonable basis in fact or law for naming Crown as a defendant.

### A.    Crown Named as the Successor to Mundet

OI first argues that Plaintiff named Crown as a defendant in bad faith because 15 Pa.C.S. § 1929.1, a statute that became effective on December 17, 2001, bars any liability Crown had for Mundet products. Indeed, there is no dispute that Plaintiff's counsel knew of the statute and of its effect.

Plaintiff merely counters that while his counsel knew that § 1929.1 shielded Crown from successor liability, he apparently hoped that the statute would be found unconstitutional by the Pennsylvania Superior or Supreme Court. Specifically, before Plaintiff and his wife filed their complaint, his counsel was aware that in a different case, Markovsky v. Crown Cork & Seal Company, the plaintiff had raised a number of constitutional challenges to the statute in the Court of Common Pleas. No. 11100451, 2014 WL 348152, at *1 (Pa. Com. Pl. Jan. 8, 2014). On September 12, 2013, the court rejected the plaintiff's arguments and found § 1929.1 constitutional. Id. at *2. Shortly after the ruling, the plaintiff appealed the decision to the Superior Court.

Several months later on March 11, 2014, while the appeal in Markovsky was pending, the Neys filed their complaint,

arguably hoping that the Superior Court would overturn § 1929.1. (Pl. Mot. ECF No. 9, p.2). After the death of his wife, Plaintiff filed an amended complaint on December 9, 2014. (Id. at 3). At this time, the Markovsky appeal was still pending. As is evident from the time line of events, although there was an unrelated appeal pending in the Superior Court, when Plaintiff filed his original and amended complaints the law of Pennsylvania clearly dictated that Crown was not liable for exposure to Mundet products pursuant to § 1929.1.

Moreover, as the subsequent history of Markovsky shows, throughout the pendency of Plaintiff's case, § 1929.1 has continued to protect Crown from successor liability as: on December 22, 2014, the Superior Court in Markovsky affirmed the decision of the Court of Common Pleas, 107 A.3d 749 (Pa. Super. 2014), re-argument denied (Feb. 26, 2015); and on September 29, 2015 the Supreme Court denied the petition for allowance of appeal. 125 A.3d 1202 (Pa. 2015).

Shortly after the Pennsylvania Supreme Court denied the petition for appeal in Markovsky, Crown informed Plaintiff that the corporate designee deposition that he noticed in late October 2015 was unnecessary because Crown would be relying on § 1929.1 (Pl. Mot. ECF No. 9-1, pp.7-8). Plaintiff asserts that, in light of the Markovsky precedent and the lack of exposure evidence regarding Mundet products, he cancelled the deposition

on November 12, 2015 and ultimately agreed to dismiss Crown on April 18, 2016. (Id. ECF No. 9, p.3). Thus, the decision to dismiss Crown was made more than two years after Plaintiff commenced the action.

It is clear that at the time the Neys filed their complaint and throughout the course of the litigation, § 1929.1 was the law of Pennsylvania. The fact that an appeal on a different case challenging the constitutionality of § 1929.1 was pending, does not license Plaintiff to name a defendant as a successor entity that is protected from suit under current law.[3] Under the circumstances, it is clear that Plaintiff had "no reasonable basis in fact or colorable ground supporting" the successor claim against Crown. In re Briscoe, 448 F.3d at 216 (internal quotation marks omitted). As Plaintiff has conceded, "only where it is clear that the plaintiff cannot possibly recover from the non-diverse defendant will the joinder be deemed fraudulent." (Pl. Reply ECF No. 13, p.7) (citing Boomerang Recoveries, LLC v. Guy Carpenter & Co., LLC, No. 16-0222, 2016 WL 1594954, at * 4 (E.D. Pa. Apr. 21, 2016)). Here, at no time during the pendency of the suit could Plaintiff have possibly recovered from Crown as successor to Mundet. As a

---

[3]     Although Plaintiff filed short form complaints in the Court of Common Pleas, which do not provide an opportunity to raise individualized defenses and issues, the Court also notes that at no time did Plaintiff raise any constitutional arguments against § 1929.1 in his own case.

result, the Court is able to "discern, as a matter of law, . . . that the cause fails to present even a colorable claim against" Crown. In re Briscoe, 448 F.3d at 219.

In addition to the statutory bar, OI contends that Plaintiff's conduct during the case also confirms that he had no intention of actually pursuing Crown as a legitimate defendant. Specifically, OI asserts that the Neys had known since receiving the 2013 affidavit of Mr. DelGrosso, the only relevant product identification witness, that he did not recall any Mundet products. See (OI Resp. ECF No. 11-2). Similarly, OI notes that Plaintiff's counsel did not ask any questions about Mundet at Mr. DelGrosso's deposition. See (Id. ECF Nos. 11-4, 11-5). Instead, OI asserts correctly that it was the defendants who asked Mr. DelGrosso about Mundet products, over Plaintiff's counsel's objection. (Id. ECF No. 5, p.3). The Court notes that in his motion for remand, Plaintiff misrepresents this event by erroneously stating that "Plaintiff's counsel asked Mr. DelGrosso about Loretta Ney's father's (Nicholas Grello) exposure to Mundet asbestos. Unfortunately, Mr. DelGrosso could not identify Mundet asbestos products." (Pl. Mot. ECF No. 9, pp.2-3, 7). See Forth, 2013 WL 6096528, at *3 ("'Both inconsistent statements and implausible explanations have been recognized as evidence of guilty knowledge.'") (quoting United States v. Villarreal, 324 F.3d 319, 325 (5th Cir. 2003)). OI

further argues that Plaintiff did not seek any real discovery from Crown until October 2015, eighteen months after commencement of the suit, when he noticed the corporate designee's deposition – which he quickly canceled. See Id. ("'[B]ad faith may be overt or may consist of inaction . . . [such as] lack of diligence and slacking off.'") (quoting Bank of China v. Chan, 937 F.2d 780, 789 (2d Cir. 1991)).

Plaintiff asserts that although he and his wife knew Mr. Grello was exposed to many asbestos-containing products when he worked for Bethlehem Steel, they did not know to which specific products he was exposed. Thus, they sued Crown to protect the claim in case they later were able to substantiate it with evidence of exposure to Mundet insulation. While Plaintiff asserts that his counsel diligently investigated Mr. Grello's exposure, the evidence, as discussed above, does not support that contention. Thus, the Court concludes that, in addition to the law clearly protecting Crown from exposure to Mundet products during the entire course of the case's history, the circumstantial evidence also support's OI's position. As a result, OI has met its burden of proof in establishing that Crown was joined as a successor defendant for the purpose of destroying diversity jurisdiction. Plaintiff argues that "[u]nless the claim is 'wholly insubstantial and frivolous,' joinder will not be deemed fraudulent." (Pl. Reply ECF 13-1,

p.7) (citing <u>In re Briscoe</u>, 448 F.3d at 218). Here, given that
the law clearly precluded Crown's liability for Mundet products,
the claim was indeed frivolous.[4]

### B.   Crown Named Individually as a Defendant

OI asserts that Plaintiff only sued Crown individually
so that, in light of 15 Pa.C.S. § 1929.1, Crown's inclusion
would not appear facially invalid. Plaintiff provides almost no
rationale for naming Crown individually as a defendant. He
merely states that he and his wife sued Crown individually
because they "had an obligation to investigate all possible
sources of asbestos exposure." (Pl. Reply ECF No. 13-1, p.8).
However, Plaintiff previously explained in more detail that:

> Crown Cork was named as a Defendant for a
> legitimate purpose. Crown Cork held
> liabilities as the successor to Mundet, a
> manufacturer of asbestos insulation. In his
> role as an insulator, there was a good faith
> belief that Mr. Grello may have worked with
> Mundet insulation during the course of his
> employment at Bethlehem Steel.

(Pl. Mot. ECF No. 9, p.12); <u>see also</u> (Pl. Reply ECF No. 13-1,
p.4) (providing that "Plaintiff therefore initially named Crown

---

[4]   Plaintiff also argues that the fact that OI and Crown
asserted cross-claims against each other in their answers shows
that they took the claims against Crown seriously. However, as
noted by OI, the cross-claims all arose automatically pursuant
to Pa. R. Civ. P. 1041.1 which provides that in asbestos
actions, a defendant's entry of appearance constitutes a denial
of all averments in the complaint, an allegation of all
affirmative defenses, and a claim for indemnification and
contribution from the other parties. Thus, the facts raised by
Plaintiff do not support his position.

Cork a defendant to protect claims if Mundet's products were identified as a source of Loretta Ney's asbestos exposure"). Likewise, Plaintiff provides only one reason for ultimately dismissing Crown: "[a]fter a thorough review and analysis, Plaintiff conceded that 15 Pa. C.S. § 1929.1 applied and . . . extinguished his claim of liability against Crown Cork." (Id., p.3). Simply put, even Plaintiff's briefs do not serious defend against the assertion that there was no legitimate reason for naming Crown individually.

Further supporting OI's contention is the fact that at no time did Plaintiff pursue questions or discovery related specifically to Crown products. As a result, the Court concludes that OI has met its burden of proof in establishing that Plaintiff did not name Crown individually as a defendant for any legitimate purpose and that there was "no real intention in good faith to prosecute the action against" Crown individually. In re Briscoe, 448 F.3d at 216 (internal quotation marks omitted).

**IV.  CONCLUSION**

The law and the evidence presented shows that Plaintiff had no reasonable basis in fact or colorable ground supporting the claim against Crown. Thus, the Court concludes that Plaintiff acted in bad faith in joining Crown as a defendant for the purpose of destroying diversity jurisdiction.

As a result, OI timely removed this case and Plaintiff's motion for remand will be denied.

An appropriate Order follows.