IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM NEY, Individually and as       :        CIVIL ACTION
Executor of the Estate of LORETTA NEY
                                        :
        v.
                                        :
OWENS-ILLINOIS, INC., et al.                     NO.  16-2408

**MEMORANDUM OF DECISION**

THOMAS J. RUETER                                 December 6, 2016
United States Magistrate Judge

       Presently before the court is plaintiff's Motion for Sanctions against defendant Asbestos Corporation Limited ("ACL") ("Motion for Sanctions," Doc. 25) and ACL's response thereto ("Resp.," Doc. 27).  The court held a hearing on the Motion for Sanctions on this same date.  For the reasons that follow, the court denies the Motion for Sanctions, but will grant plaintiff's request to compel ACL to produce discovery but on a more limited scale than previously sought by plaintiff.

**I.      BACKGROUND**

       On March 11, 2014, plaintiff filed a complaint in the Court of Common Pleas for Philadelphia County against ACL, Crown, Cork & Seal Company, Inc., individually and as successor to Mundet Cork Corporation, Owens-Illinois, Inc., and Union Carbide Corporation (collectively, the "defendants").  Plaintiff, Loretta Ney, now deceased, alleged that she was exposed to asbestos contained in defendants' products when she was a child living with her father.  Ms. Ney's father, Nicholas Grello, worked as an asbestos insulator for Bethlehem Steel in Bethlehem, Pennsylvania from 1948 to 1953.  Mr. Grello allegedly brought particles of asbestos home in his car and on his clothes.  Ms. Ney contends that she came into contact with asbestos

particles when she rode in her father's car or laundered his clothing. On or about November 29, 2012, Ms. Ney was diagnosed with mesothelioma. She was eighty-one years old at the time. On April 25, 2014, she passed away at the age of eighty-three years.

Prior to her death, Ms. Ney was deposed by the defendants. She could not provide any information on the asbestos containing products her father was exposed to at Bethlehem Steel. Specifically, she could not state that her father was exposed to asbestos fiber manufactured by ACL. Plaintiff, however, produced an affidavit from an individual named Anthony Delgrosso, who was a co-worker of plaintiff's father at Bethlehem Steel. Mr. Delgrosso stated that he worked with Nicholas Grello at Bethlehem Steel from 1949 to 1953. Mr. Delgrosso identified only Kaylo Pipe Covering manufactured by Owens-Illinois, Inc. and Insulag spray manufactured by Quigley Company, Inc., as the asbestos containing products Mr. Grello worked with or around at Bethlehem Steel. At a deposition taken on June 12, 2014, Mr. Delgrosso further testified that he never heard of Eagle Picher or Mundet Corporation. He also could not identify any asbestos containing products by Union Carbide Corporation. Mr. Delgrosso did not provide any testimony regarding the use of raw asbestos fiber at Bethlehem Steel.

On or about November 12, 2015, plaintiff served upon ACL a Notice of Videotaped Deposition and Notice to Produce Documents for December 1, 2015. The Notice of Corporate Designee Designation included a section that specifically requested that ACL produce documents and afford plaintiff the ability to conduct a site inspection of ACL's document repository located in Quebec, Canada, prior to the deposition. ACL did not produce a corporate

designee or the requested documents, and denied plaintiff an inspection of its document repository.

On February 19, 2016 plaintiff filed, in the state court, a Motion to Compel Discovery from ACL ("Motion to Compel"). ACL opposed the Motion to Compel. In the Motion to Compel, plaintiff claimed that she was exposed to ACL asbestos fibers as follows:

> The nature of Mr. Grello's work exposed him to several types of asbestos products supplied by ACL. Mr. Grello brought particles of ACL asbestos home in his car and on his clothes. Among other ways, Mrs. Ney came into contact with ACL asbestos particles when she rode in her father's car or laundered her father's clothes.

(Motion to Compel at 1.) In its response filed in state court, ACL denied the allegations that plaintiff was exposed to asbestos fibers milled by ACL and argued that plaintiff had not offered any witness or other evidence to support her contention that plaintiff's father was exposed to asbestos products supplied by ACL. ACL further explained as follows:

> There was never any allegation and there is no evidence that plaintiff's father ever worked with or around, or was exposed to, any of defendant ACL's raw chrysotile asbestos fiber at the Bethlehem Steel plant. ACL never manufactured or sold any asbestos containing products. ACL mined and milled raw chrysotile asbestos fiber, which is a naturally occurring mineral substance and not a manufactured product. ACL has never sold or supplied any of its asbestos fiber to Bethlehem Steel and there is no evidence that plaintiff's father ever worked with or around any of ACL's raw chrysotile asbestos fiber. In fact, despite the decades of asbestos litigation conducted in Pennsylvania, there has never been any evidence that ACL supplied its fiber to Bethlehem Steel and, as such, ACL has been dismissed in cases alleging exposure at the Bethlehem Steel work site.

(Resp. at 6 (internal citation omitted).)

On April 5, 2016, a Judge in the Court of Common Pleas for Philadelphia County signed plaintiff's proposed order granting the Motion to Compel and directed ACL to: (1) produce a corporate designee for a deposition within twenty days of the order; (2) produce all

documents requested by plaintiff; and (3) grant plaintiff access to ACL's document repository for a site inspection.  ACL did not comply with this order because it alleges that there is no individual currently employed by ACL with personal knowledge concerning plaintiff's requests and that the Quebec Business Concerns Records Act ("QBCRA") would prevent ACL from producing, and anyone from ACL from testifying regarding information obtained from the review of, documents located in the Province of Quebec.

On May 17, 2016, defendant Owens-Illinois, Inc. removed the case to federal court.  The case was assigned to the Honorable Eduardo C. Robreno.  On October 13, 2016, plaintiff filed the Motion for Sanctions at issue herein.  On  November 8, 2016, plaintiff filed an amended complaint naming ACL and Owens-Illinois, Inc. as defendants.  On November 16, 2016, Judge Robreno referred plaintiff's Motion for Sanctions to the undersigned for disposition.

## II. DISCUSSION

### A. Authority to Vacate State Court Order Granting Motion to Compel

ACL alleges that the state court committed error in granting plaintiff's Motion to Compel.  Thus, an initial question to be answered is whether this federal court has authority to vacate or modify the order of the Court of Common Pleas for Philadelphia County that is the subject of plaintiff's Motion for Sanctions.  The court concludes that it does have this authority.  Pursuant to 28 U.S.C. § 1450, "[w]henever any action is removed from a State court to a district court of the United States . . . [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."  28 U.S.C. § 1450.  The Supreme Court of the United States has held that Section 1450 recognizes a "district court's authority to dissolve or modify injunctions, orders, and all other

proceedings had in state court prior to removal." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 437 (1974).  Once a case is removed to federal court, "it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." Id.  "In sum, whenever a case is removed, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed.  The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered." In re Diet Drugs, 282 F.3d 220, 232 n.7 (3d Cir. 2002) (quoting Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1330, 1304 (5th Cir. 1988)).

For the reasons explained below, this court will vacate the order of the state court and issue a new order granting plaintiff's Motion to Compel, but on a more limited basis.  This court also will deny plaintiff's Motion for Sanctions since the court has vacated the state court's order granting the Motion to Compel.  The court takes this action for two reasons.  First, the state court's order is overly broad in that it directs ACL to produce information on products to which plaintiff's father was not exposed while he worked at Bethlehem Steel.  Second, prior to the entry of its order, the state court appears not to have considered the factors that are required in a comity analysis before a court can compel a foreign corporation to produce documents in contravention of its country's "blocking statute." See Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 546 (1987).  See also Buttitta v. Asbestos Corp., Ltd., 2006 WL 2355200, at *2 (N.J. Super. Ct. App. Div. Aug. 16, 2006) (vacating lower court order compelling discovery from ACL for failure to analyze Aerospatiale

comity factors). After application of these factors discussed below, the court finds that the state court's order compelling wide-ranging discovery is overly broad.

      B.      <u>**Quebec's Blocking Statute – QBCRA**</u>

ACL's opposition to plaintiff's Motion for Sanctions, and Motion to Compel, is based upon the Quebec Business Concerns Records Act ("QBCRA"), which prohibits a corporation organized and existing under the laws of Quebec, Canada, from producing its documents to a court in a foreign jurisdiction. ACL also argues that the QBCRA prohibits its representative from testifying regarding information obtained from documents located in Quebec, and that no individual presently working for ACL possesses independent knowledge of ACL's activities in the 1940's and 1950's when plaintiff's father allegedly was exposed to asbestos.

The relevant section of the QBCRA provides,

> [N]o person shall, pursuant to or under any requirement issued by any legislative, judicial or administrative authority outside Quebec, remove or cause to be removed, or send or cause to be sent, from any place in Quebec to a place outside Quebec, any document or resume or digest of any document relating to any concern.

QBCRA ¶ 2. This provision of the QBCRA is known as a "blocking statute," that is, "a law passed by the foreign government imposing a penalty upon a national for complying with a foreign court's discovery order." <u>Skyy, Inc. v. Thumbplay Ringtones, LLC</u>, 2014 WL 11429038, at *4 (D. Mn. Apr. 4, 2014) (quoting <u>Lyons v. Bell Asbestos Mines, Ltd.</u>, 119 F.R.D. 384, 388 (D.S.C. 1988)).

The Supreme Court addressed blocking statutes in <u>Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa</u>, 482 U.S. 522, 546 (1987). The

parties in that case differed on the application and effect of The Hague Evidence Convention[1] and a French blocking statute on the trial court's power to compel discovery responses from a foreign adversary. The Court declined to issue a blanket rule regarding the application of The Hague Evidence Convention or blocking statutes noting that each case must be scrutinized on its own "particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." Id. at 544. The Court concluded that "the concept of international comity requires in this context a . . . particularized analysis of the respective interests of the foreign nation and the requesting nation." Id. at 543-44 (footnote omitted). The Court explained the comity analysis and the factors to be considered as follows:

> The nature of the concerns that guide a comity analysis is suggested by the Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft No. 7, 1986) (approved May 14, 1986) (Restatement). While we recognize that § 437 of the Restatement may not represent a consensus of international views on the scope of the district court's power to order foreign discovery in the face of objections by foreign states, these factors are relevant to any comity analysis:
>
> "(1) the importance to the . . . litigation of the documents or other information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means of securing the information; and
> (5) the extent to which noncompliance with the request would undermine important interests in the United States, or compliance with the request would undermine important interests of the state where the information is located." Ibid.

---

[1] The Hague Evidence Convention "prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." Societe Nationale Industrielle Aerospatiale, 482 U.S. at 524. The Hague Evidence Convention is not mandatory and "was intended to establish optional procedures that would facilitate the taking of evidence abroad." Id. at 538. The Hague Evidence Convention is not at issue in the instant case.

Id. at 544 n. 28.[2]  The Court emphasized that the comity analysis is equally applicable where foreign blocking statutes are invoked.  Id. at 544 n.29.  The Supreme Court held that "[i]t is well settled that [blocking] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."  Id. (citation omitted).  See also Skyy, Inc., 2014 WL 11429038, at *5 ("A review of case law reveals that courts have not looked favorably on blocking statutes or the QBCRA.") (citing cases); Trueposition, Inc. v. LM Ericcson Tel. Co., 2012 WL 707012, at *4-*5 (E.D. Pa. Mar. 6, 2012) (same).  As noted by the court in Skyy, "the Supreme Court of Canada held that the QBCRA was 'constitutionally inapplicable to other [Canadian] provinces' because blocking discovery would effectively immunize businesses in Quebec from producing discovery in other provinces."  Skyy, 2014 WL 11429038, at *5 (quoting Hunt v. Lac d'Aiante du Quebec Ltee, 4 S.C.R. 289, 327, 329, 331 (1993)).

In the instant case, factor one weighs in favor of production.  Factor one considers the importance of the requested information to the litigation.  Plaintiff is entitled to discovery to determine whether ACL's raw asbestos fiber is a component in the asbestos products to which plaintiff's father allegedly was exposed.  See Buttitta v. Allied Signal, Inc., 2010 WL 1427273, at *24-*25 (N.J. Super. Ct. App. Div. Apr. 5, 2010) (considering the QBCRA and the comity analysis and the same defendant at issue herein, ACL, the state court determined that production was essential to plaintiff's case "and plaintiff was entitled to attempt to develop information

---

[2] Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tentative Draft No. 7, 1986) (approved May 14, 1986), is now Restatement (Third) of Foreign Relations Law of the United States, § 442 (1987).  See Buttitta v. Allied Signal, Inc., 2010 WL 1427273, at *24 n. 11 (N.J. Super. Ct. App. Div. Apr. 5, 2010).

relative to the quantity of asbestos purchased by GM directly, as well as, indirectly through other entities, which supply product to GM").  The evidence plaintiff is seeking from ACL is not cumulative and is relevant.  Factor two concerns the specificity of the request.  The evidence plaintiff is seeking from ACL is not specific but is wide-ranging in scope.  Thus, as the request now stands, factor two weighs in favor of non-production.  However, as explained later, the court finds that plaintiff's discovery request is overly broad and will narrow plaintiff's document request substantially.  See Societe Nationale Industrielle Aerospatiale, 482 U.S. at 545 (when conducting the comity analysis, the Court noted that "[s]ome discovery procedures are much more 'intrusive' than others").  With these new limitations, factor two now weighs in favor of production.  Factor three, whether the information originated in the United States, also weighs in favor of production.  To the extent ACL sold its fibers to companies in the United States to be incorporated into their asbestos products, it is possible that documents regarding the sale of ACL fiber could have originated in the United States.  Additionally, ACL admits that some responsive documents already are located in the United States.  See Resp. at 8 (ACL offered, inter alia, "production of documents already in the United States").

      Factor four considers the availability of alternative means of securing the information.  In its Response, ACL states that it "suggested alternatives such as written discovery propounded by plaintiff and the production of documents already in the United States."  Id.  ACL further stated that plaintiff's counsel did not respond to these alternative proposals.  Id.  ACL, however, did not produce responsive documents located within the United States.  This factor weighs in favor of production, especially in light of the court's significant narrowing of the scope of permitted discovery herein.

The fifth factor weighs in favor of production. This factor requires analysis of the extent to which non-production would undermine important interests of the United States, or production would undermine important interests of Quebec. The United States has an "important interest" in protecting its citizens from harmful products. The court in Buttitta, noting that the enactment of the QBCRA and other blocking statutes "was done in an attempt to prevent the long arm reach of the United States' anti-trust statutes," concluded that the fifth factor weighed in favor of production against the defendant ACL, the same defendant as in this matter, in a products liability asbestos matter. Buttitta, 2010 WL 1427273, at *26 (citing Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1476 (9th Cir.), cert. denied, 506 U.S. 903 (1992)). This matter does not involve anti-trust statutes. ACL has articulated no basis to conclude that this factor weighs in favor of non-production. The fifth factor weighs in favor of production in light of the important interest of the United States to protect its citizens from harmful products.

All five factors in the comity analysis weigh in favor of production. Consequently, the court will issue an order compelling limited production of documents.

### C. Issuance of New Order Compelling Limited Production of Documents

For the reasons explained above, the court rejects ACL's position that it should be excused from producing any of the documents requested by plaintiff. However, the court finds that plaintiff's requests, at this time, are overly broad. As ACL stated in its opposition brief, "Plaintiff's document requests included forty (40) categories of documents, the majority of which were completely unlimited in time and scope and/or sought information irrelevant to the subject matter in this action given the limited scope and nature of plaintiff's household exposure claims." (ACL's Br. at 7.) Accordingly, the court will enter an order vacating the state court's order and

substituting in its place a new order requiring ACL to make a limited production of documents to plaintiff based upon the product identification testimony in the record. See Adams v. Allstate Ins. Co., 189 F.R.D. 331, 332-33 (E.D. Pa. 1999) (limiting discovery after finding requests were overly broad). ACL will be required to produce copies of all documents[3] concerning the sale and supply of asbestos fibers by ACL for the years 1945 to 1953 to the following companies: (1) Owens-Illinois, Inc., manufacturer of Kaylo Pipe Covering; (2) Quigley Company, Inc., manufacturer of the Insulag spray product; and (3) Bethlehem Steel, where plaintiff's father worked as an asbestos installer. See Plaintiff's Document Request at 4 ¶¶ 9 and 10, at 6 ¶ 10. At this time, the court limits the production of ACL documents to these three companies because they are the only companies co-worker Anthony Delgrosso identified as having any connection with plaintiff's father. See Palmer v. Heidelberg USA, Inc., 2014 WL 6746844, at *1 (E.D. Pa. Oct. 10, 2014) (Robreno, J.) ("Under Pennsylvania law, a plaintiff must establish, as a threshold matter, that [his or her] injuries were caused by a product of a particular manufacturer or supplier.").

After ACL produces these documents, to the extent they exist, counsel shall meet and confer pursuant to Loc. R. Civ. P. 26.1(f), to attempt to reach an agreement on the remaining requests for documents set forth in plaintiff's Notice to Produce Documents and to schedule the deposition of an ACL corporate representative regarding the produced documents. If the parties

---

[3] Courts have stated that they are not convinced that the QBCRA "would be contravened by the production of photocopies outside Quebec or by the inspection of documents within Quebec." Central Wesleyan College v. W.R. Grace & Co., 143 F.R.D. 628, 645 (D.S.C. 1992) (citing Lyons v. Bell Asbestos Mines, Ltd., 119 F.R.D. 384, 388 (D.S.C. 1988)). See also Petruska v. Johns-Manville, et al., 83 F.R.D. 32, 36 (E.D. Pa. 1979) (Pollak, J.) ("[T]here is no indication that the statute would be offended if defendants were to make copies of the requested documents and submit those, with a sufficient showing of authenticity.").

are unable to reach an agreement on these issues, plaintiff may file a motion to compel with this court in accordance with the rulings provided by the court in this Memorandum of Decision.

    An appropriate Order follows.

                      BY THE COURT:

                      /s/ Thomas J. Rueter
                      THOMAS J. RUETER
                      United States Magistrate Judge